DONALD J. CASIDA and GLORIA M. FANTOZZI, FORMERLY KNOWN AS GLORIA M. CASIDA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Casida v. Commissioner
Docket No. 3690-77.
United States Tax Court
T.C. Memo 1979-267; 1979 Tax Ct. Memo LEXIS 260; 38 T.C.M. (CCH) 1054; T.C.M. (RIA) 79267; July 17, 1979, Filed *260 Held, petitioner was not engaged in drag racing for profit; therefore, he is entitled to deductions for racing expenses only to the extent of income derived from such activity as provided in sec. 183, I.R.C. 1954. David L. Shaw, for the petitioners. Jan R. Pierce, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies of $2,252.34 and $3,539.71 in petitioners' Federal income tax for taxable years 1972 and 1973, respectively. After concessions, the sole issue is whether *261 petitioner Donald J. Casida's drag racing was an "activity * * * not engaged in for profit" within the meaning of section 183(a). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Donald J. Casida (hereinafter petitioner) and Gloria M. Fantozzi, formerly Gloria M. Casida, were husband and wife residing in Cottage Grove, Oregon, when they filed their 1972 and 1973 Joint Federal income tax returns with the Internal Revenue Service Center in Ogden, Utah.Although they have since been divorced, they both resided in Oregon at the time their petition was filed in this case.During the years at issue they were calendar year-cash method taxpayers. Petitioner is a school administrator serving as principal of a Cottage Grove, Oregon, junior high school at all times relevant herein. Since age 16 he has been interested in racing automobiles and has engaged in that activity for over 35 years. In early 1972 petitioner purchased a Plymouth Duster automobile and spent approximately $10,000 in modifying the vehicle to qualify as a superstock drag racer. The superstock *262 race classification is based on the particular design and nature of the vehicle. In 1972 and 1973, a valid driver's license was the only personal qualification needed for racing in the superstock classification. Petitioner raced on weekends in a racing circuit located primarily in the Pacific Northwest. On some weekends, he entered as many as three races at treee different race tracks. Most drag races are held on weekends to draw admission paying spectators and to accommodate individual racers like ptitioner who are otherwise employed full-time. Depending on weather conditions, the drag racing season runs from February through November. Prizes in the form of purses awarded by drag race organizers constituted petitioner's primary source of raising income. Purses varied from track to track and were available only upon paying an entry fee. In 1972 and 1973, an average purse in petitioner's circuit ranged from $150 to $200. The entry fee was between $5 and $7. Petitioner also had sponsors who on a limited basis provided him with products such as oil, spark plugs, and a set of tires. During 1972 and 1973 there were five national races for superstock drag racing which were located *263 in Pomona, California; Gainesville, Florida; Indianapolis, Indiana; Englishtown, New Jersey; and Amarillo, Texas. Petitioner's attempt to qualify for the nationals in Pomona, California, failed. He has never raced in any of the national races. Petitioner has never made a profit from superstock racing. His 1970 through 1975 income tax returns show the following losses: Racing
Racing
Net Loss
Year
Income
Expenses
From Racing
1970 $ 150 $ 410 $ (260)
1971
0
10
( 10)
1972
360
5,963
(5,603)
1973
1,010
11,141
(10,131)
1974
1,184
8,690
(7,506)
1975
1,480
4,518
(3,030)
$4,184
$30,732
(26,540)
Petitioner deducted racing expenses of $5,963.95 and $11,140.67 in 1972 and 1973, respectively. In his notice of deficiency, respondent allowed deductions only to the extent of gross income from racing or $360 in 1972 and $1,010 in 1973 claiming the activity was not engaged in for profit. Substantiation of the expenses is not at issue. OPINION The sole issue is whether petitioner's drag racing was an "activity * * * not engaged in for profit" within the meaning of section 183. If so, petitioner is allowed deductions arising from *264 his racing activity only to the extent of gross income earned from such activity unless the deductions are allowable without regard to whether the activity was engaged in for profit. If, on the other hand, petitioner's primary purpose and intention in engaging in the racing activity was to make a profit, his expenses are fully deductible under section 162. Jasionowski v. Commissioner,66 T.C. 312, 319(1976); Benz v. Commissioner,63 T.C. 375, 383 (1974). The test under section 183 is not whether the taxpayer's intention and expectation of profit is reasonable but whether such intention and expectation is bona fide. Golanty v. Commissioner,72 T.C. No. 39 (1979); Benz v. Commissioner,supra at 383; Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F. 2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). The Commissioner has promulgated regulations under section 183 which set forth nine separate factors to consider in making a profit-motive determination. Sec. 1.183-2(b)(1)-(9), Income Tax Regs. In applying an objective standard, however, these enumerated *265 factors are neither exclusive nor necessarily controlling. All the facts and circumstances with respect to the activity must be taken into account. Sec. 1.183-2(b), Income Tax Regs.
Petitioner has been racing autos for some 35 years. He testified that in 1967, after some 25 years of recreational auto racing, he began racing professionally for profit. Before and after 1967, petitioner has never made a profit from his racing activity. From 1970 through 1975, his losses from racing exceeded his income from that activity by $26,540. Nonetheless, he maintains that he had a bona fide intention and expectation of making a profit from his racing activity. On the basis of this record, we find that expectation unconvincing. Accordingly, for reasons set out below, we find that petitioner was not engaged in racing autos for profit and hold for respondent. One of petitioner's witnesses, Paul Smith, was a national champion drag racer in the superstock classification, having won a national championship in Pomona, California, in 1973. Smith testified that he had been racing professionally since 1969 and had made a profit in less than 50 percent of the years he had been racing for a living. *266 Smith finally had to take another job to support himself because he could not do so from drag racing and drag racing got more expensive as the number of competitors increased. Although to engage oneself in an activity for profit does not necessarily require earning an amount sufficient to support oneself, it must be noted that petitioner has never raced in the nationals where profit-making is plausible. Smith testified that he considered himself to be a professional when he started going to the "nationals" and even then he had great difficulty in making his racing profitable. Petitioner's attempt at racing in the nationals in Pomona, California, was thwarted when he failed to even qualify for entering the race. Moreover, Smith had product sponsors, while petitioner had very little support from sponsors. The evidence shows that product sponsors by defraying expenses for operating an auto were essential to profitable drag racing. In sum, petitioner could not have had a bona fide expectation of making a profit because he had never raced at the national level and raced in a circuit which paid relatively small purses. Furthermore, he did not have the sponsorship needed to make engaging *267 in the activity of drag racing profitable. Petitioner's drag racing activity never lost its predominantly recreational character even after 1967 when he claims to have engaged in it as a professional. Although claiming he was motivated by profit after 1967, petitioner continued enjoying drag racing in the same way as he had the previous 25 years when starting to race at age 16. He held a full-time employment as a junior high school principal and used his vacations and weekends for drag racing. Petitioner simply did not convince us that the reasons for his participation in drag racing changed in any meaningful way after 1967. While the lack of profit is not a conclusive factor in our determination, the evidence does not show that petitioner ever expected to profit from racing to the extent of recouping the losses sustained from the time he claimed to have acquired a profit motive. See Golanty v. Commissioner,supra;Bessenyey v. Commissioner,supra at 275. Furthermore, petitioner's testimony that he maintained an income and expense ledger without submitting such ledger into evidence is not enough to convince us that he handled his drag *268 racing activity in a businesslike manner by maintaining adequate books and records. We haveconsidered the parties' other arguments and find them unpersuasive. Accordingly, we must hold for respondent. Decision will be entered under Rule 155.
Footnotes
1. All statutory references re to the Internal Revenue Code of 1954, as amended.↩